UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NICKOLAS SEEKINS,                        )
                                         )
                    Plaintiff,           )
                                         )
        vs.                              )        No. 1:17-cv-4415-JMS-TAB
                                         )
DOLGENCORP, LLC D/B/A                    )
DOLLAR GENERAL,                          )
                    Defendant.           )

**ORDER**

On November 10, 2017, Plaintiff Nickolas Seekins filed a Complaint against Dolgencorp,

LLC d/b/a Dollar General ("Dollar General") in Marion Superior Court related to injuries he

sustained while operating an allegedly defective double pallet jack (the "SJ4") at the Dollar

General Distribution Center in Marion, Indiana as part of his duties as an employee of LMS

Intellibound, LLC d/b/a Capstone Logistics ("Capstone"). [Filing No. 1-1 at 6.] On November

29, 2017, Dollar General removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and

1446. [Filing No. 1 at 1-2.]

Between the time of the incident and the commencement of this action, Dollar General

replaced a part of the SJ4—the control handle. Mr. Seekins has filed a Motion for Finding of

Spoliation of Evidence and Request for Sanctions ("Motion for Sanctions"), [Filing No. 44],

arguing that Dollar General intentionally destroyed or concealed the machine part to prevent Mr.

Seekins from testing the handle. That motion is ripe for the Court's decision.

Also before the Court is Dollar General's Motion for Summary Judgment, [Filing No. 51],

in which Dollar General argues that it is entitled to judgment in its favor on Mr. Seekins'

negligence claim against it. In his response to Dollar General's Motion for Summary Judgment,

Mr. Seekins filed a Cross-Motion for Partial Summary Judgment related to the issue of whether Dollar General owed a duty to Mr. Seekins. [Filing No. 59.] The parties have filed briefs in support and in opposition to these motions, and both motions are ripe for the Court's decision.

For the reasons outlined below, the Court **DENIES** Mr. Seekins' Motion for Sanctions, **GRANTS** Mr. Seekins' Cross-Motion for Partial Summary Judgment, and **GRANTS** Dollar General's Motion for Summary Judgment.

## I.
### FACTUAL BACKGROUND

The following factual background is set forth pursuant to the standards outlined in Federal Rule of Civil Procedure 56, detailed in Section III below. *See Fed. R. Civ. P. 56(a).* The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). The facts set forth below also apply to the Court's consideration of the issue of spoliation raised in Mr. Seekins' Motion for Sanctions.

### 1. Dollar General's Equipment Maintenance Procedures

Dollar General owns and stores certain equipment inside the Dollar General Distribution Center in Marion, Indiana, including the SJ4. [Filing No. 52-3 at 2.] Many of the functions of the Distribution Center were performed by Capstone employees, such as Mr. Seekins. Capstone employees regularly used the SJ4. [Filing No. 52-3 at 2.] Equipment stored at the Distribution Center is subject to routine preventative maintenance checks at regular intervals occurring approximately four times per year. [Filing No. 52-3 at 2.] During a preventative maintenance check, Dollar General's mechanics inspect the machines to confirm that the equipment is working in accordance with the manufacturer specifications. [Filing No. 52-3 at 3.] The mechanics go

through a list of parts and functions they must check during preventative maintenance, including testing the brakes and the brake allowance to see how far the machine will continue to move after the stopping function is triggered while traveling at full speed. [Filing No. 52-4 at 20-21.] At the end of the preventative maintenance check, the mechanic conducts a test ride on the machine, lasting approximately fifteen minutes, which allows the mechanic to test the machine twice in that time period. [Filing No. 52-4 at 22-23.]

In addition to the preventative maintenance described above, Dollar General's equipment undergoes other maintenance as needed, such as when an equipment operator reports that there is a problem with a machine. [Filing No. 52-3 at 2.] If an operator using a piece of equipment experiences a problem with a machine, or if a maintenance employee observes a problem with a machine, they are to report the problem and take the machine immediately and directly to Dollar General's Maintenance Department. [Filing No. 52-3 at 2; Filing No. 52-4 at 19-20.] A "Red Tag" form—which includes the operator's name, date, equipment name, and the alleged problem—is completed and stuck to the piece of equipment using a magnetic clipboard. [Filing No. 52-3 at 2; Filing No. 52-4 at 6-8.] The mechanic in the Maintenance Department inspects the machine and completes his or her portion of the Red Tag form, including his or her name, employee identification number, and the problem and/or remedy. [Filing No. 52-3 at 3.] The Red Tag is only removed upon the Maintenance Department's confirmation that the problem with the machine has been fixed and that the piece of equipment is working in accordance with the manufacturer's specifications. [Filing No. 52-3 at 3.] When the Red Tag is removed, the machine is returned to the floor to be operated again. [Filing No. 52-3 at 3.] The Maintenance Department does not return the equipment to the floor until this procedure outlined above is completed. [Filing No. 52-3 at 3.] Dollar General depends on the operators and maintenance employees to discover

any problems with the equipment during the preventative maintenance checks or during use of the machines; otherwise, there is no way for Dollar General to become aware of any problems. [Filing No. 52-3 at 2; Filing No. 52-4 at 19-20.]

### 2. *Maintenance of the SJ4 Prior to Mr. Seekins' Injury*

The Dollar General Maintenance Department conducted preventative maintenance on the SJ4 on March 21, 2017 and March 22, 2017, and the next preventative maintenance check was scheduled for approximately June 18, 2017. [Filing No. 52-3 at 3; Filing No. 52-3 at 7.]

Other maintenance work was performed on the SJ4 on the following dates in 2017: March 22, April 1, April 26, April 28, and, May 1. [Filing No. 52-3 at 3-4.] The work performed included: adjusting castors, welding the load rest, replacing the battery, stoning the commutator, repairing wires, cleaning and adjusting the brakes, and, replacing battery wires. [Filing No. 52-3 at 3-4.] After each occasion of maintenance work, Dollar General's Maintenance Department ensured that the machine was working in accordance with manufacturer specifications before it was returned to the floor. [Filing No. 52-3 at 3-4.] These types of repairs and maintenance work—and the frequency with which they are performed—are typical for Dollar General's Maintenance Department. [Filing No. 52-3 at 4.]

Prior to Mr. Seekins' injury on May 16, 2017, Dollar General's Maintenance Department last performed maintenance work on the SJ4 on May 1, 2017. [Filing No. 52-3 at 4; Filing No. 52-3 at 9.] At the time, the mechanic did not observe any problems with the machine's braking, plugging, or other stopping methods. [Filing No. 52-3 at 4.] The SJ4 was returned to the floor once the Maintenance Department confirmed that the machine was working within the manufacturer specifications. [Filing No. 52-3 at 4.] No problems with the SJ4 were reported or

observed between May 1, 2017 and May 16, 2017, the date of Mr. Seekins' injury. [Filing No. 52-3 at 4.]

Dollar General purchased the SJ4 in 2006 when the warehouse opened. [Filing No. 60-1 at 6-7.] A machine of the same make and model, the SJ3, was purchased at the same time. [Filing No. 60-2 at 7.] At the time of Mr. Seekins' injury, the SJ3 had been retired from service, with the usable parts removed and retained by the Maintenance Department and the rest of the machine discarded in the dumpster. [Filing No. 60-2 at 45.]

### 3. *Mr. Seekins' Injury*

On May 16, 2017, while in the course and scope of his employment with Capstone, Mr. Seekins was injured while operating the SJ4, which was provided by Dollar General at the Dollar General Distribution Center located in Marion, Indiana. [Filing No. 44 at 1.] Before using the SJ4, Mr. Seekins conducted a twelve-point inspection of the machine, and he did not discover any problems with it. [Filing No. 52 at 7; Filing No. 52-6 at 30-32.] Mr. Seekins operated the SJ4 for two hours without incident. [Filing No. 52-6 at 7.] However, at one point, Mr. Seekins thought he felt the machine jerk when he hit the brakes. [Filing No. 52-6 at 14.] After he perceived the jerk, the machine worked fine and there was no indication that there was a problem with the SJ4. [Filing No. 52-6 at 14.] Mr. Seekins did not report this alleged issue to Dollar General's Maintenance Department, and he continued to operate the SJ4. [Filing No. 52-6 at 13-14.] Mr. Seekins then rode the SJ4 through the bays of the Distribution Center toward the office to drop off paperwork. [Filing No. 52-6 at 11.] Mr. Seekins was traveling at full speed as he approached an aisle where he turned left. [Filing No. 52-6 at 15.] Mr. Seekins saw a forklift parked at the end of the aisle and he "went to hit the brakes," but the machine "wasn't responding" and failed to slow down. [Filing No. 52-6 at 15; Filing No. 52-6 at 17-18.] He used the emergency brake, but "that

didn't stop [the machine] quick enough." [Filing No. 52-6 at 20.] As the SJ4 continued toward the parked forklift, Mr. Seekins decided to jump backwards off the machine, and his left foot became pinned between the SJ4 and the parked forklift, ultimately resulting in the amputation of his foot. [Filing No. 52-6 at 21-22; Filing No. 52-6 at 24.] According to Mr. Seekins, the SJ4 malfunctioned and Mr. Seekins could not bring the machine to a stop. [Filing No. 44 at 1.]

### 4. *Events After Mr. Seekins' Injury*

Immediately after the incident occurred, the SJ4 was taken to Dollar General's Maintenance Department and multiple mechanics examined the machine, but they did not find any problems with it. [Filing No. 54 at 1; Filing No. 54-1 at 17-19; Filing No. 54-1 at 30; Filing No. 54-1 at 61.] One mechanic, Jerry Williams, found that the "plugging"—the function that reverses the motor to slow the machine down to a stop—did not work intermittently (i.e., one out of about twenty tries), so he checked the potentiometer, which controls the plugging function. [Filing No. 54-1 at 21-22.] However, upon inspection of the potentiometer, Mr. Williams found that it "was right on the target." [Filing No. 54-1 at 23.]

The Maintenance Department contacted Rod Disbro of Associated Integrated Supply Chain Services to examine the machine and double check the Maintenance Department's conclusion that there were no problems with the SJ4. [Filing No. 54-1 at 30; Filing No. 54-1 at 61.] On May 22, 2017, Mr. Disbro inspected the SJ4, test driving it for forty-five minutes. [Filing No. 54-1 at 71.] Mr. Disbro found nothing wrong with the SJ4, noting that he "could not get [the SJ4] to fail and the braking distance was in line with [manufacturer] specifications." [Filing No. 54-1 at 71.] Mr. Williams asked Mr. Disbro if the Maintenance Department should simply replace the handle on the SJ4 and "see what happens." [Filing No. 54-1 at 35.] Mr. Disbro advised Mr. Williams that that action "couldn't hurt." [Filing No. 54-1 at 35.] The maintenance manager gave

permission for the replacement of the handle, and the handle was replaced on June 2, 2017. [Filing No. 54-1 at 32.] The old handle was discarded, which is standard procedure for the Maintenance Department for parts that are no longer reusable. [Filing No. 54-1 at 25-26.]

On May 21, 2017—the day before Mr. Disbro's inspection of the machine—the SJ4 was returned to the Dollar General Maintenance Department and was "Red Tagged." [Filing No. 60-2 at 26.] An image of the of the Red Tag form and its contents are below. Mr. Maggard stated that the machine "wouldn't brake, wouldn't throttle back, [and] couldn't stop." [Filing No. 60-2 at 26.]



| RED TAG - DO NOT USE | | |
| --- | --- | --- |
| **OPERATOR'S PORTION** | | |
| RED TAGGED DATE: 5 /21/ 17 TIME: 5 :30 AM/PM SHIFT: 1st | | |
| OPERATOR NAME: Wendell Maggard DEPT: Curling | | |
| EQUIPMENT # 4 | | |
| PROBLEM: | | |
| wouldn't brake , wouldn't throttle back , couldn't stop | | |
| **MECHANIC'S PORTION** | | |
| MECHANIC 1'S NAME: 032 HOUR METER: WO#: 99719 | | |
| EQUIPMENT / DRIVE # SJ4 Date: 5·22·17 Total Time: 50 hrs | | |
| PROBLEM / REMEDY: ORDERED Parts | | |
| | | |
| MECHANIC 2'S NAME: 031 Date: 6-2-17 Total Time: 1 hrs | | |
| PROBLEM / REMEDY: took handle off of SJ3 and put on this one, due to not having all the parts | | |

[Filing No. 60-2 at 26.]

**5.   Mr. Seekins' Letter Requesting Preservation of the SJ4**

Three days after the accident, Mr. Seekins' counsel sent a letter to the Dollar General Distribution Center, requesting that the SJ4 be preserved.  [Filing No. 44-2 at 2-3.]  The letter was addressed as follows:



**PLEASE RESPOND TO INDIANAPOLIS OFFICE**

May 19, 2017

V<small>IA</small> C<small>ERTIFIED</small> M<small>AIL</small>:  7014 2120 0002 3518 1290
R<small>ETURN</small> R<small>ECEIPT</small> R<small>EQUESTED</small>

Dollar General Distribution Center
5575 Dollar General Way
Marion, IN 46952

Re:    Our Client:        Nickolas Seekins
       His Employer:      Capstone Logistics
       Date of Loss:      5/16/17

Dear Sir/Madam:

Our office has been retained by Nickolas Seekins to pursue a third-party claim for the injuries he received on or about May 16, 2017, when the forklift malfunctioned causing him severe and permanent injuries.

Please let this serve as our formal request that the forklift be preserved and remain in the same condition as it was at the time of Nickolas' incident on May 16, 2017.  As you know,

[Filing No. 44-2 at 2.]

The USPS tracking information for this letter indicates that the letter was delivered to an individual at the address on May 22, 2017.  [Filing No. 44-2 at 1.]  Mr. Seekins' counsel did not retain the signed certified mail green card, which indicated who signed for the letter when it was delivered on May 22, 2017.  [Filing No. 54 at 1, n. 1.]

Dollar General's Risk Management Department does not have any record of receiving the letter. [Filing No. 54-1 at 55.] On November 16, 2017, Dollar General received its first notice of Mr. Seekins' claim when it received service of the Complaint in this cause of action. [Filing No. 54-1 at 55.]

### 6. *Procedural History in this Case*

Mr. Seekins initiated this lawsuit on November 10, 2017. [Filing No. 1]. He alleges that he was "negligently provided with a dangerous and defective forklift by DOLLAR GENERAL which malfunctioned resulting in severe and permanent injuries to [him], including but not limited to amputation of his foot." [Filing No. 52-1 at 10.] Mr. Seekins filed a negligence claim against Dollar General in Marion Superior Court, [Filing No. 1-1 at 6-7], and the case was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. [Filing No. 1 at 1-2.] Dollar General has moved for summary judgment on Mr. Seekins' claim against it. [Filing No. 51.]

## II.
### MOTION FOR FINDING OF SPOLIATION OF EVIDENCE AND REQUEST FOR SANCTIONS

The Court will first consider Plaintiff's Motion for Sanctions, [Filing No. 44], because it defines the scope of the evidence the Court may consider on summary judgment, especially because Mr. Seekins seeks dispositive relief as the sanction for the alleged spoliation.

### A. Legal Standard

It is well established that under the Erie doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Because this case involves diversity of citizenship, the Court shall apply Indiana state law related to spoliation. *Bonilla v. Rexon Indus. Corp.*, 2015 U.S. Dist. WL 10792026, at *10 (S.D. Ind. 2015) ("In a diversity of citizenship case, such as this one, federal courts in the Seventh Circuit apply the respective state law principles regarding spoliation."). Under Indiana

law, "[s]poliation consists of the intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible." *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (internal quotation marks and citations omitted). "The party raising a claim of spoliation bears the burden of proving that 1) there was a duty to preserve the evidence, and 2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence." *Popovich v. Ind. Dep't of State Revenue*, 17 N.E.3d 405, 410 (Ind. T.C. 2014) (citing *Glotzbach v. Froman*, 854 N.E.2d 337, 338-39 (Ind. 2006)). "Mere ownership of potential evidence, even with knowledge of its relevance to litigation, does not suffice to establish a duty to maintain such evidence." *Glotzbach*, 854 N.E.2d at 341. "[C]ourts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *see also Am. Nat. Prop. and Cas. Co. v. Wilmoth*, 893 N.E.2d 1068, 1071-73 (Ind. Ct. App. 2008) (holding that a party owed no duty to preserve evidence where it "had no notice of a pending lawsuit at the time of the alleged spoliation," and where the item disposed of "had no foreseeable evidentiary value and could not have been expected to be a focus of the litigation") (internal quotation marks and citations omitted).

### B. Discussion

In his Motion for Sanctions, Mr. Seekins argues that Dollar General had a duty to preserve the handle of the SJ4 because Dollar General "knew that the condition of SJ4 is a critical issue in this case," was on notice of Mr. Seekins' injury, and had exclusive possession and control of the SJ4. [Filing No. 44 at 2.] Mr. Seekins argues that Dollar General, its attorneys, or its insurance carrier should have filed with the Court a "protocol" for the testing of the SJ4 prior to replacement

of the handle. [Filing No. 44 at 2.] Mr. Seekins requests that the Court enter default judgment against Dollar General for this alleged spoliation. [Filing No. 44 at 7.]

In response, Dollar General argues that it had no duty to preserve the SJ4's handle. [Filing No. 54 at 4.] Dollar General argues that this spoliation issue was not foreseeable because Dollar General was not put on notice of Mr. Seekins' desire for the SJ4 to be preserved in "as is" condition. [Filing No. 54 at 5.] Dollar General indicates that it has no record of its Maintenance Department, Risk Management Department, or attorneys receiving the letter Mr. Seekins' counsel sent. [Filing No. 54 at 6.] Dollar General points out that the letter was not sent to Dollar General's registered agent, nor to its corporate office. [Filing No. 54 at 5.] Instead, it argues, the generally-addressed letter (i.e., "Sir/Madam") was sent to the Distribution Center, which is over 1.1 million square feet and houses over 600 employees of Dollar General, as well as other workers employed by contractors (such as the security officers who work at one of the main entrances). [Filing No. 54 at 5.] Further, Dollar General argues that although the incident occurred at the Distribution Center, the employees who witnessed the incident were not in a position of responsibility to know that Mr. Seekins may potentially bring a claim against Dollar General in the future. [Filing No. 54 at 6.] Dollar General contends that this point is further supported by the fact that Dollar General did not think the SJ4 was the cause of the accident because it could not find anything wrong with the SJ4 and it was the general opinion of Mr. Seekins' employer that Mr. Seekins' own actions caused the accident. [Filing No. 54 at 6.] Dollar General asserts that, therefore, prior to the lawsuit being filed, it was not foreseeable to Dollar General that the replaced part of the SJ4 would be relevant or necessary. [Filing No. 54 at 6.] Dollar General also argues that, even if it did owe a duty to Mr. Seekins to preserve the part of the SJ4, Mr. Seekins has not produced any evidence

demonstrating that Dollar General intentionally destroyed, mutilated, altered, or concealed evidence in bad faith. [Filing No. 54 at 7.] Dollar General argues it replaced the handle, out of an abundance of caution, because nobody could find a problem with the machine and Mr. Williams and Mr. Disbro thought that replacing the handle to "see what happens" "couldn't hurt," and may "eliminat[e] possible causes of the reported problem. . . ." [Filing No. 54-1 at 35; Filing No. 54 at 7.]

Mr. Seekins did not file a reply brief in support of his Motion for Sanctions.

Upon review of the facts underlying the Motion for Sanctions, the Court finds that Mr. Seekins has not presented any evidence demonstrating that a responsible representative of Dollar General received Mr. Seekins' letter requesting the preservation of the SJ4. Mr. Seekins did not send the letter to Dollar General's registered agent in Indiana, nor did he address the letter to "General Counsel" or some other party that would reasonably be responsible for handling situations of potential litigation. Mr. Seekins did not even direct the letter to Dollar General's Maintenance Department or Risk Management Department. Instead, Mr. Seekins sent the letter, with no specific addressee named, to the Dollar General Distribution Center in Marion, Indiana, which has over 600 workers, some of which are not even employees of Dollar General. Nor is there any evidence that Dollar General was on notice that it would be subject to litigation brought by Mr. Seekins or that a part of the SJ4 would be relevant to that litigation. *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (noting that sanctions for spoliation are only appropriate where the party knew, or should have known, the litigation was impending).

In addition to the lack of evidence showing that Dollar General received Mr. Seekins' request to preserve the SJ4 "as is," there is also a lack of evidence that the handle was replaced or disposed of in bad faith. *See Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) ("An

employer's destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse to the employer's case."); *see also Hogan v. Metal Plate Polishing Inc., 2008 U.S. Dist. WL 4276244, at \*2 (N.D. Ind. 2008)* (quoting *Faas v. Sears, Roebuck & Co., 532 F.3d 633, 644 (7th Cir. 2008)* ("Rather, in order to draw an inference that destroyed evidence contained adverse information, 'we must find that [the party] intentionally destroyed the document in bad faith.'")).  One of Dollar General's mechanics, Mr. Williams, testified that the handle was replaced to see if the replacement "made a difference" because the mechanics and Mr. Disbro could not find anything wrong with the SJ4.  [Filing No. 54-1 at 32.]  The part was discarded in accordance with the Maintenance Department's standard procedure for parts that are no longer reusable, [Filing No. 54-1 at 25-26], and this action was taken in the course of ordinary business to ensure operator safety.  *See Hogan, 2008 U.S. Dist. WL 4276244 at \*3* (noting the items at issue were not destroyed in bad faith but in the ordinary course of business).

For these reasons, the Court declines Mr. Seekins' request for a finding of spoliation of evidence and the imposition of sanctions against Dollar General. Accordingly, Mr. Seekins' Motion for Sanctions, [Filing No. 44], is **DENIED**.

### III.
### MOTION FOR SUMMARY JUDGMENT

With the spoliation issue settled, the Court turns now to Dollar General's Motion for Summary Judgment, [Filing No. 52], and Mr. Seekins' Cross-Motion for Partial Summary Judgment, [Filing No. 59].

### A.  Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Cv. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail" on summary judgment. *Id.* at 648.

## B. Discussion

Sitting in diversity, this Court's duty "is to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). As such, this Court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by the court if the present case were before it now." *Golden v. State Farm Mut. Auto. Ins. Co.*, 745 F.3d 252, 255

(7th Cir. 2014) (citations omitted).  Under Indiana law, "to recover on a negligence theory, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach."  *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 19 (Ind. Ct. App. 2015).  "Although summary judgment is generally inappropriate in a negligence case, it may be appropriate if the defendant demonstrates that the undisputed facts negate at least one element of the plaintiff's claim."  *Am. Legion Pioneer Post No. 340 v. Christon*, 712 N.E.2d 532, 534 (Ind. Ct. App. 1999).

In its Motion for Summary Judgment, Dollar General argues that it did not owe a duty to Mr. Seekins, did not breach any duty, and its actions could not have been the proximate cause of Mr. Seekins' injury.  [Filing No. 52 at 9.]  Dollar General states:

> The undisputed material facts show that [Dollar General] conducted a thorough inspection of the . . . SJ4, . . . it was operating within manufacturer specifications prior to returning it to the floor for use[,] . . . [and] no problems, incidents, or issues involving the SJ4 were reported prior to [Mr. Seekins'] accident on May 16, 2017.

[Filing No. 52 at 9.]  Dollar General argues that, in fact, Mr. Seekins inspected the machine himself prior to his use of it, and he confirmed that the SJ4 was working "fine."  [Filing No. 52 at 9.]  He did not experience any problems with the machine while operating it in the two hours leading up to the accident.  [Filing No. 52 at 9.]  Dollar General argues that it did not have actual or constructive knowledge that there was a problem with the machine prior to the accident, and it reasonably believed that Mr. Seekins (and/or other operators) would have realized if a dangerous condition existed and would have reported the problem to the Maintenance Department.  [Filing No. 52 at 12.]  Dollar General states:

> If [Mr. Seekins] did not uncover an alleged problem with the machine after using it for two hours, and no one else reported or witnessed any problems with the machine despite near constant use from May 1, 2017 to May 16, 2017, there is no way [Dollar General]

could have been expected to anticipate or foresee an issue or defect with the SJ4—a machine that was in proper working order upon the date of [Dollar General's] last inspection.

[Filing No 52 at 17.]  Dollar General argues that these undisputed facts demonstrate that it satisfied its duty (if such a duty was actually owed) to Mr. Seekins.  [Filing No. 52 at 14.]  Dollar General also argues that its actions were not the proximate cause of Mr. Seekins' injury, especially because there is no evidence that the SJ4 even malfunctioned during the accident.  [Filing No. 52 at 14.] Further, Mr. Seekins was not trained or certified to use the SJ4, and he was unfamiliar with all of the machine's mechanisms for safety and stopping the machine.  [Filing No. 52 at 14-15.]

In response to Dollar General's Motion for Summary Judgment, Mr. Seekins filed a brief in opposition and a Cross-Motion for Partial Summary Judgment, [Filing No. 59], on the legal issue of whether Dollar General owed a duty to Mr. Seekins.  In support of his Cross-Motion, Mr. Seekins states that Dollar General required Mr. Seekins to use the SJ4 "without inspecting or testing it to ensure its safe operation before he used it."  [Filing No. 59 at 7.]  Further, Mr. Seekins argues, the SJ4 should have been removed from use at the warehouse like the SJ3 was, because they were the same make and model and had been used similarly since Dollar General purchased them in 2006.  [Filing No. 59 at 7.]  Mr. Seekins also notes that the odometer hour counter on the machine had "rolled over," so it was unclear exactly how long the SJ4 had been operated between preventative maintenance services.  [Filing No. 59 at 7.]  Mr. Seekins also points out that (1) preventative maintenance of the machine was done "by calendar and not by usage"; and, (2) the malfunction warning system (i.e. the "wrench light") on the machine failed to work.  [Filing No. 59 at 9.]

In its reply brief, [Filing No. 61], Dollar General contests Mr. Seekins' argument that the SJ4 "should have been retired" like the SJ3, pointing out that the SJ3 is a completely separate

machine and that Mr. Seekins has failed to show that the two machines "were operated under identical circumstances and conditions since their date of purchase." [Filing No. 61 at 4.] Dollar General also challenges Mr. Seekins' reference to the odometer on the SJ4, arguing that this reference is "unsupported by the record and irrelevant to the issues as to whether the SJ4 was in a reasonably safe condition and whether [Dollar General] had knowledge of any defects." [Filing No. 61 at 5.] Similarly, Dollar General argues that Mr. Seekins' argument regarding the mechanical warning "wrench" light is also not supported by the evidence in the record and is irrelevant because it "does not constitute evidence that [Dollar General] failed to properly inspect or maintain its equipment or that [Dollar General] had knowledge of any defect in the machine." [Filing No. 61 at 5.] Dollar General also addresses Mr. Seekins' Cross-Motion for Partial Summary Judgment and states that it "does not dispute the fact that, under Indiana law, a supplier of chattel owes a duty of reasonable care as set forth in *McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243 (Ind. 1997)." [Filing No. 61 at 12.] However, Dollar General argues that it did not owe a *continuing* duty to Mr. Seekins to inspect the SJ4 while it was being used by others, such as Capstone employees. [Filing No. 61 at 12.]

In his reply brief in support of his Cross-Motion for Partial Summary Judgment, [Filing No. 64], Mr. Seekins directs the Court's attention to the incident on May 21, 2017 where an otherwise unidentified individual, Wendell Maggard, filled out a Red Tag form for the SJ4, indicating that the machine "[w]ouldn't brake, wouldn't throttle back, [and] couldn't stop." [Filing No. 64 at 3.] Mr. Seekins argues that this malfunction, occurring less than a week after Mr. Seekins' injury, shows that the SJ4 did not work correctly and should have been removed from service. [Filing No. 64 at 3.] Finally, Mr. Seekins argues that the alleged spoliation of the handle

is relevant on summary judgment because he would be entitled to a presumption of negligence, at a minimum. [Filing No. 64 at 4.]

Dollar General filed a Surreply, [Filing No. 66], in which it argued that several of the alleged facts raised by Mr. Seekins in his reply brief are not supported by the evidence of record, and none of the alleged facts raised by Mr. Seekins create a genuine issue of material fact as to Dollar General's Motion for Summary Judgment. [Filing No. 66 at 4.] Dollar General also notes that several portions of Mr. Seekins' reply brief should be stricken because they do not relate to his Cross-Motion or the issue of duty. [Filing No. 66 at 4.] Moreover, Dollar General argues, Mr. Seekins' allegations and evidence related to spoliation should be stricken because his spoliation claims are addressed in a separate, fully-briefed motion, and should not be considered in connection with the motions for summary judgment. [Filing No. 66 at 5.]

In this case, the fact of an injury is not in dispute. Further, the final briefs of the parties agree that a supplier of chattel owes a duty to the user of the chattel. However, because the parties disagree on the issue of whether Dollar General owed a continuing duty to Mr. Seekins in this case, the Court will first address the element of duty, and then will consider whether Dollar General breached that duty.

### 1. Duty

Indiana courts have adopted and apply Sections 388 and 392 of the Restatement (Second) of Torts, which relate to liability imposed on suppliers of dangerous chattels. *McGlothlin v. M & U Trucking, Inc.*, 688 N.E.2d 1243, 1245 (Ind. 1993); *Dutchmen Mfg., Inc. v. Reynolds*, 849 N.E.2d 516, 519 (Ind. 2006); *Downey v. Union Pac. R.R.*, 411 F. Supp. 2d 977, 981-82 (N.D. Ind. 2006) (noting that the Indiana Supreme Court adopted "two of the supplier liability provisions in the

Restatement (Second) of Torts").  These sections provide guidance on the duty a supplier of equipment owes to a user of said equipment.

Section 388 states:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965).

Section 392 states:

> One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied
>
> (a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied or,
>
> (b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Restatement (Second) of Torts § 392 (1965).

These sections of the Restatement (Second) of Torts impose a duty on a supplier of chattel to exercise reasonable care to: (1) make the chattel safe for use; and, (2) discover any dangerous

condition of the chattel and inform expected chattel-users of any danger. *See Downey v. Union Pac. R.R.*, 411 F. Supp. 2d 977, 981 (N.D. Ind. 2006) ("Indiana law now recognizes that the supplier of chattel has a duty to inspect for defects that may harm people who use the chattel."). Although Dollar General originally argued that it did not owe a duty to Mr. Seekins in this specific case, the substance of Dollar General's argument deals more with Dollar General's lack of knowledge of a dangerous condition. This argument is more applicable to the element of breach, rather than the element of duty. *See McGlothlin v. M & U Trucking, Inc., et al.*, 688 N.E.2d 1243, 1245 (Ind. 1997) ("[T]he inquiry into the reasonable discoverability of a defect may be proper in evaluating whether a supplier has breached the duty of reasonable care but not in determining whether such duty exists.").

It is undisputed that Dollar General supplied Mr. Seekins with the SJ4, and, thus, it is clear that Dollar General was a supplier of chattel for the purpose of Sections 388 and 392 of the Restatement (Second) of Torts. For this reason, the Court **GRANTS** Mr. Seekins' Cross-Motion for Partial Summary Judgment, holding that Dollar General owed Mr. Seekins a duty of reasonable care as outlined in Sections 388 and 392 of the Restatement (Second) of Torts, which have been adopted by Indiana courts.

The Court will now examine whether Dollar General breached this duty.

### 2. Breach

Generally, whether a breach of duty has occurred is a question of fact. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010). However, a breach of duty may be determined as a matter of law when the facts are undisputed and lead to a single inference or conclusion. *Id.* In addressing whether Dollar General breached its duty to Mr. Seekins, the Court considers whether Dollar General exercised reasonable care to: (1) make the SJ4 safe for use; (2) discover any dangerous

conditions of the SJ4; and, (3) inform the users of the SJ4 of any dangerous conditions. This issue turns on what steps Dollar General took to discover and prevent any dangerous conditions of the SJ4 prior to Mr. Seekins' accident and what Dollar General knew prior to the accident.

"A negligence claim under section 388 [of the Restatement (Second) of Torts] may be based upon the supplier's actual or constructive knowledge of the danger." *Dutchmen Mfg, Inc. v. Reynolds*, 849 N.E.2d 516, 523 (Ind. 2006). Constructive knowledge is defined as a "condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the [defendant], his agents or employees had used ordinary care." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) (quoting *Wal-Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992), *trans. denied*.). "[B]efore liability may be imposed on the [defendant], [the defendant] must have actual or constructive knowledge of the danger. . . . [The defendant] is subject to liability only if it knows or by reasonable care would have discovered the condition." *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995). "Negligence may not be inferred simply from the fact that an accident occurred." *Downey v. Union Pac. R.R.*, 411 F. Supp. 2d 977, 983 (N.D. Ind. 2006) (citing *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005)).

Here, the undisputed evidence establishes that Dollar General exercised reasonable care to make the SJ4 safe for use through its systematic equipment maintenance procedures. Dollar General performed routine preventative maintenance work on the SJ4 at least four times per year. Additionally, the Maintenance Department checked the SJ4 after each maintenance service to ensure that it was working in accordance with the manufacturer specifications before it was returned to the floor for to be used again. These post-service checks included testing the brakes and the brake allowance to see how far the machine continued to move after the stopping function

was triggered while the machine was traveling at full speed.  Because the Maintenance Department specifically checked the brakes and the brake allowance as part of its routine maintenance procedures and found no problems, Dollar General did not breach the standard of reasonable care that a supplier of chattel owes to a chattel-user.  *Cf. Carson v. ALL Erection & Crane Rental Corp.,* 2014 U.S. Dist. 2014 WL 1660379, at *3 (S.D. Ind. 2014) (holding that a question of fact existed regarding whether the equipment supplier breached its duty of care when it failed to specifically inspect the detent controller of the machine, which machine part was alleged to be defective and the cause of the accident).

Moreover, Mr. Seekins has presented no evidence showing that Dollar General was aware of a problem with the SJ4 prior to the accident on May 16, 2017.  The last maintenance work on the SJ4 was performed on May 1, 2017 and the machine was checked at that time to ensure that it was working within the manufacturer specifications before it was returned to the warehouse floor. From May 1, 2017 to May 16, 2017, no problems were reported to the Maintenance Department, nor did any employees of the Maintenance Department observe any problems with the SJ4.  Thus, Dollar General did not breach its duty to Mr. Seekins because Dollar General was not aware of any dangerous conditions that existed and needed to be reported to Mr. Seekins prior to his use of the machine.

Mr. Seekins attempts to create an issue of fact by pointing to the Red Tag form completed by Mr. Maggard on May 21, 2017, noting that Mr. Maggard was experiencing braking problems similar to those alleged by Mr. Seekins.  However, this event occurred after Mr. Seekins' accident, and is therefore irrelevant to the issue of whether Dollar General was aware of a braking problem with the SJ4 prior to Mr. Seekins' accident.  As noted in *Downey v. Union Pac. R.R.*, simply because an accident occurred does not mean that negligence occurred.  411 F. Supp. 2d 977, 983

(N.D. Ind. 2006). Similar to Mr. Seekins' case, the plaintiff in *Downey* was injured while using a piece of allegedly defective equipment that had been provided to her. *Id.* at 979. Prior to her accident, the plaintiff and her co-worker conducted an inspection of the equipment and determined it was "in good shape" and functioned properly. *Id.* They operated the equipment several times without incident; however, at one point the equipment became stuck and the plaintiff was injured. *Id.* Although an accident report completed afterward "attributed [the plaintiff's] injury to defective equipment," the District Court held that "[n]o jury reasonably could find that [the chattel-supplier] knew or should have known of an alleged defect in a piece of equipment that both passed inspection by the plaintiff and that the plaintiff operated multiple times immediately prior to the accident without incident until it became stuck for unknown reasons." *Id.* at 983. Similarly, here, there is no evidence of record showing that Dollar General had any actual or constructive knowledge of any braking problems with the SJ4 *prior to* Mr. Seekins' accident. In fact, Mr. Seekins operated the machine for two hours without incident. When he experienced a jerk while using the plugging function on the machine, he did not report this issue to Dollar General's Maintenance Department, but instead chose to continue to operate the SJ4. No reasonable jury could find that Dollar General knew of an issue with the SJ4 prior to the accident, nor could it find that Dollar General failed to exercise reasonable care in discovering dangerous conditions of the SJ4 and making the SJ4 safe for use.

## IV.
### CONCLUSION

Because Dollar General did owe a duty to Mr. Seekins, the Court **GRANTS** Mr. Seekins' Cross-Motion for Partial Summary Judgment, [59]. Further, the Court **DENIES** Mr. Seekins' Motion for Sanctions, [44]. As such, Mr. Seekins' claim boils down to one issue: whether there is evidence that Dollar General had actual or constructive notice of a problem with the SJ4. Because

Mr. Seekins has not produced any evidence showing that Dollar General knew of a problem with the SJ4 prior to Mr. Seekins' accident on May 16, 2017, he has not shown that Dollar General breached a duty of reasonable care and so cannot succeed on his negligence claim. For the foregoing reasons, the Court **GRANTS** Dollar General's Motion for Summary Judgment, [51]. Final judgment shall enter accordingly.

Date: 4/3/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**